STATE ex rel Walter David
KEMP, Relator,

v.

Honorable Edward D. HODGE, Circuit
Judge, Montgomery County,
Missouri, Respondent.

No. 63054.

Supreme Court of Missouri,
En Banc.

March 9, 1982.

Rehearing Denied as Modified on Courts
Own Motion April 6, 1982.

Frank K. Carlson, Public Defender, Union, for relator.

Walter A. Murray, Jr., Pros. Atty., Timothy J. Melenbrink, Asst. Pros. Atty., Union, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

SEILER, Judge.

This is an original proceeding in prohibition. Relator Kemp, under the Uniform Mandatory Disposition of Detainers Law, §§ 222.080–.150, RSMo 1978,[1] seeks to prohibit the respondent circuit judge from proceeding to try him on a two count information charging him with first degree murder and robbery. Relator alleges the court has lost subject matter jurisdiction by operation of law under § 222.100, for failure to try

him within 180 days of receipt of his request for disposition under the Uniform Mandatory Disposition of Detainers Law.

The facts of this case are not contested. Relator is presently serving a twenty-nine year sentence in the Missouri state penitentiary. On February 15, 1979, while relator was imprisoned, a two count complaint was filed against relator in Franklin County for alleged offenses committed prior to his imprisonment and a detainer filed with the Division of Corrections.[2] Pursuant to § 222.080, relator requested final disposition of indictments, informations, or complaints pending against him. The request was admittedly received by the Franklin County Associate Circuit Court where the charge was pending and by the Franklin County Prosecuting Attorney on August 20, 1979. A preliminary hearing was held on February 14, 1980 and the relator was bound over for trial. On March 3, 1980, an information was filed. After several continuances and other procedural delays (all of which occurred after more than 180 days had elapsed from the date of relator's request), the cause was set for trial on October 7, 1980, at which time relator moved to dismiss for failure to bring him to trial within 180 days from receipt of the request. Judge Hodge overruled the motion on November 14, 1980. Thereafter this court issued its preliminary writ prohibiting Judge Hodge from proceeding with the trial.

The Uniform Mandatory Disposition of Detainers Law (UMDDL) provides for the prompt disposition of detainers based on untried state charges pending against a prisoner held within this state's correctional system. It was first adopted in Missouri in 1959, 1959 Mo.Laws H.B. 259, and was amended in 1971 to include complaints as

---

1. All statutory references are to RSMo 1978, unless indicated otherwise.

2. " 'A detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges ....' " *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978) (quoting H.R. Rep. No. 81–1018, p. 2 (1970)). In Missouri, a detainer may be filed against a prisoner by

filing a copy of a *complaint* or an *indictment*. The detainer lodged against the prisoner during pendency of the complaint remains until final disposition of the charge underlying the detainer, *i.e.*, dismissal of the complaint after preliminary hearing or trial if the defendant is bound over and an information filed. A new detainer is not lodged after an information has been filed.

well as untried indictments and informations. 1971 Mo.Laws 277. Eight jurisdictions have adopted the uniform act: Alabama, Arizona, Colorado, Kansas, Minnesota, Missouri, North Dakota, and Utah.[3] The Missouri version differs from the uniform law by giving the state 180 days to bring the prisoner to trial once a request for disposition of the charge has been made rather than 90 days. This 180 day period may be extended by the court if it is reasonable or necessary, or if the parties stipulate for a continuance. Section 222.100. The purpose of the UMDDL is to provide a relatively simple procedure for an expeditious release of detainers filed against a prisoner. Because of the time limits, it requires the prosecuting officials to move forward to trial of the charge underlying the detainer. It looks toward valid charges being ripened into trials, and invalid charges being dismissed.

Missouri, along with almost all other jurisdictions, also has entered into the "Agreement on Detainers," §§ 222.160–.220, adopted at the same session of the legislature as the 1971 amendment to the UMDDL. The "Agreement on Detainers" applies to criminal charges pending against a prisoner in another jurisdiction's correctional system.

Experience has shown that once a charge or detainer is filed against an inmate, that inmate's status within the prison changes adversely. Much has been written about the baleful effect of detainers. In *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the Court quoted the former director of the Federal Bureau of Prisons, as saying:

"It is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's abil-

ity to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement."

*Id.* at 379, 89 S.Ct. at 577 (quoting Bennett, The Last Full Ounce, 23 Fed.Prob. No. 2, p. 20, at 21 (1959)). These deleterious effects have been well documented.

"The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole, there is little hope for his release after an optimum period of training and treatment, when he is ready to return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalzation and the objective of the correctional system is defeated."

Dauber, Reforming the Detainer System: A Case Study, 7 Crim.L.Bull. 669, 671 (1971) (quoting Council of State Governments, Handbook on Interstate Crime Control 86 (rev. ed. 1949)). *See also* Wexler and Hershey, Criminal Detainers in a Nutshell, 7 Crim.L.Bull. 753 (1971); Note, Detainers and the Correctional Process, 1966 Wash.U. L.Q. 417.

To allow rehabilitation programs and treatment programs to be planned and carried out, it is necessary that untried charges be disposed of either by trial or by dismissal within a reasonable time. "It is apparent that the aim of the legislature was to prevent those charged with enforcement of criminal statutes from holding over the head of a prisoner undisposed of charges against him." *State v. Wilson*, 22 Utah 2d 361, 453 P.2d 158, 159 (1969). *See generally* L. Abramson, Criminal Detainers

---

**3.** Ala.Code §§ 15–9–80 to –88 (Cum.Supp. 1981); 17 Ariz.Rev.Stat.Ann. Rule 8.3(b) (1973); Colo.Rev.Stat. §§ 16–14–101 to –108 (1973); Kan.Stat. §§ 22–4301 to –4308 (1974); Minn.Stat.Ann. § 629.292 (West Cum.Supp.

1981); §§ 222.080–.150, RSMo 1978; N.D. Cent. Code §§ 29–33–01 to –08 (1974); Utah Code Ann. §§ 77–65–1 to –3 (1953). Other jurisdictions have adopted similar laws.

29–36 (1979). This policy is set out expressly in the Agreement on Detainers Act. "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Section 222.160, art. I.[4]

In ascertaining the uniform and consistent purpose of the legislature, it is proper to consider acts passed at the same session of the legislature. *State ex rel. Jackson County v. Spradling*, 522 S.W.2d 788, 791 (Mo. banc 1975). Through enactment of both of these laws, the legislature clearly showed its intention "to go beyond constitutional minimum standards by providing (1) a specific procedure for persons imprisoned in correctional institutions of this state to obtain a speedy trial on any untried charges pending against them in this state, (2) a general rule that such imprisoned persons *shall be brought to trial* on any untried state charges within one hundred and eighty days after the designated authorities receive a properly initiated request, and (3) a loss of jurisdiction over a pending charge, irrespective of its gravity, if it is not tried within the statutorily designated time period." *Russell v. State*, 597 S.W.2d 694, 697 (Mo.App.1980) (emphasis added). *See also State v. Wilson*, 22 Utah 2d 361, 453 P.2d 158, 159 (1969).

The pertinent statutes are § 222.080.1:

Any person imprisoned in a correctional institution of this state *may request a final disposition of any untried indictment, information or complaint* pending in this state against him while so imprisoned. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment. (Emphasis added.)

and § 222.100:

Within one hundred and eighty days after the receipt of the request and certificate by the court and the prosecuting attorney or within such additional necessary or reasonable time as the court for good cause shown in open court, the prisoner or his counsel being present, may grant, *the indictment, information or complaint shall be brought to trial*; provided, that the parties may stipulate for a continuance or that it may be granted on notice to the attorney of record of an opportunity for him to be heard. *If, after such request, it is not brought to trial within the period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information or complaint be of any further force or effect*; and the court shall issue an order dismissing the same with prejudice. (Emphasis added.)

The procedures to be followed are clearly set out. The inmate must request final disposition of the pending information, indictment, or complaint. This relator did on August 8, 1979. Copies of the request must be forwarded to the prosecuting attorney and the court in which the untried indictment, information, or complaint is pending. The prosecuting attorney and the Franklin County Circuit Court received the request on August 29, 1979. This started the 180 days during which period (ending February 16, 1980) the relator must have been brought to trial or the court would lose jurisdiction and the cause must be dis-

---

**4.** The state also has a strong interest in proceeding to trial swiftly. Referring to § 545.780, the general speedy trial provision, the court in *State v. Richmond*, 611 S.W.2d 351 (Mo.App. 1980), recognized this interest:

The statute is not one which was enacted solely for the benefit of the defendant, but is also for the benefit of society. A speedy trial may indeed work against the interests of the defendant. In many cases, the defendant would postpone the trial as long as he could. Society, however, always has an interest in the expeditious disposition of criminal accusations.

*Id.* at 353–54. *See also Barker v. Wingo*, 407 U.S. 514, 519–20, 92 S.Ct. 2182, 2186–2187, 33 L.Ed.2d 101 (1972).

missed with prejudice. While the statute provides that "the indictment, information or complaint shall be brought to *trial*" within one hundred and eighty days after receipt of the request, the state argues that the state complied with the statute by "disposing of" the complaint by the preliminary hearing, held February 14, 1980, and that upon filing of the information on March 3, 1980 the state had another one hundred and eighty days in which to try relator.

The state relies on dicta in *State v. Turley*, 442 S.W.2d 75, 79 n.3 (Mo. banc 1969) *cert. denied*, 399 U.S. 934, 90 S.Ct. 2249, 26 L.Ed.2d 805 (1970), and *State ex rel. Brooks v. Bone*, 473 S.W.2d 681 (Mo.1971) to support its position that a preliminary hearing satisfies the requirements of the 1971 version of the UMDDL. The cases are distinguishable since they did not address the question at hand. The defendant in *Turley*, on January 20, 1966, had requested "immediate disposition of charges against me". At that time, defendant was charged by complaint. Subsequent to the request, a preliminary hearing was held on February 9, 1966 and an information filed February 23, 1966. Trial was held on February 16, 1967. The court noted that the uniform law used the language "indictment, information or complaint," but the general assembly had adopted a version that read only "indictment or information."[5] From this difference in language, the *Turley* court concluded that "the General Assembly intended deliberately to provide a procedure for release of detainers available to those persons against whom there is pending a prosecution commenced by information filed by a prosecuting attorney or those commenced by indictment; not to those against whom criminal proceedings have been commenced in Magistrate court by complaint." 442 S.W.2d at 79. The court also relied on the fact that defendant had made his request to the clerk, not to the court as required by the UMDDL. The basis for the decision in *Turley*, therefore, was that the statute did not cover complaints and that defendant failed to follow

statutory requirements. Neither basis is present in the case at bar.

In *Brooks*, the complaint charging first degree robbery was filed June 25, 1963. The detainer was filed with the warden July 5, 1963. Relator's request for disposition under the UMDDL was made July 25, 1969. More than 180 days later, relator moved to dismiss the complaint on the ground that a preliminary hearing had not been held within the time required by UMDDL. Upon respondent's overruling his motion, relator filed for mandamus in this court, to obtain an order compelling the magistrate to grant a preliminary hearing or dismiss the complaint.

This court pointed out that the 1959 UMDDL was not applicable to complaints pending in magistrate courts, as held in *Turley, supra*, and that, while the 1971 amendments, effective September 28, 1971, made the law applicable to complaints, this court had, in the interim, received certified copies from the magistrate court that a preliminary hearing was afforded relator on November 4, 1971, some five weeks before we handed down our decision. The issue was therefore moot, the court ruled, as defendant had received what he had requested—a preliminary hearing. That is not true in the case at bar, where relator is contending the court has lost jurisdiction altogether.

The general assembly in 1971, after the opinion in *Turley*, amended the UMDDL. Section 222.080 prior to the 1971 amendment read "final disposition of any untried *indictment or information*," § 222.080, RSMo 1969, and now reads "final disposition of any untried *indictment, information or complaint*." Section 222.080. Section 222.100 prior to the 1971 amendment read "the *indictment or information* shall be brought to trial," § 222.100, RSMo 1969, and now reads "the *indictment, information, or complaint* shall be brought to trial." Section 222.100.

---

5. As noted earlier, in 1971 the legislature amended the law to include a complaint, as well as indictment and information. Turley's case was prior to the amendment.

■ "In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts, and that in amending a statute or in enacting a new one on the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act." *Kilbane v. Director of the Department of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976) (citations omitted). Therefore, it must be presumed that the general assembly was aware of the decision in *Turley* when it amended the law to include "complaint" and by this amendment intended to effect a change in the existing law, which was, to repeat, that the act did not apply to complaints. By amending the law in 1971, we believe the legislature intended to provide for final disposition of the entire accusatory process—be it by complaint and information or by indictment—against the defendant.

The state concedes that the UMDDL was amended in response to the *Turley* decision. But, it points out, § 222.100 cannot be applied as written because a felony charge cannot be brought to trial on a complaint. Therefore, it argues, the terms "final disposition" in § 222.080 and "trial" in § 222.100 when used in reference to a complaint should be construed as meaning preliminary hearing.

In Missouri, a criminal prosecution on a felony charge is commenced by indictment or complaint. Rule 22.01. If the prosecution is commenced by a complaint and defendant is bound over at the preliminary hearing, "all papers in the proceeding" must be transmitted to the court having jurisdiction. Rule 22.07(c). The way a complaint is brought to final disposition is by a preliminary hearing at which the defendant either 1) is discharged or 2) is bound over, an information filed, and a trial held on that information. The information must be filed not later than ten days after the date of order requiring defendant to answer the charge. Rule 23.03. A complaint which ripens into an information is not at an end following the preliminary hearing. No final disposition of the charge against the defendant occurs until trial is held.

If the detainer is filed during the complaint stage, all a defendant can do is ask for disposition of all untried charges underlying the detainer. Defendant has no means of knowing whether a complaint will ripen into an information. But, he does know that for it to do so, there must first be a processing of the complaint and that means a preliminary hearing followed by the filing of an information if he is to be prosecuted further under the complaint on which the detainer was lodged. Therefore, when he asks for a final disposition of the detainer he is asking for disposition of the complaint and all that follows if the complaint is found warranted.

■ The primary rule of statutory construction is to ascertain and give effect to the legislative intent. This court must look to the object to be accomplished and the problems to be remedied by the statute. *Mashak v. Poelker*, 367 S.W.2d 625, 626 (Mo. banc 1963). As described, the purpose of both the 1959 and 1971 versions of the UMDDL is to provide a relatively simple procedure for expeditious release of *detainers*. The director of the division of corrections is obligated to inform a prisoner of "any untried indictment, information or complaint against him of which [he] has knowledge . . . ." Section 222.080.2. The prisoner then makes a request to the court where the charge is pending and to the prosecuting attorney for final disposition of that charge. Section 222.080.1. When he does so the prisoner has done what the statute requires of him. There is nothing in the statute requiring or indicating that he must make a second request. It is inconceivable that the legislature which adopted the UMDDL to provide a simple, expeditious method for disposition of detainers intended to set a trap for those prisoners originally charged by complaint.

■ Another basic principle of statutory construction is that statutes relating to the same subject matter, such as the intrastate disposition of detainers law, §§ 222.-080–.150 and the interstate agreement on detainers, §§ 222.160–.260, are in pari materia and must be considered together. *State v. Kraus*, 530 S.W.2d 684, 686–87 (Mo. banc 1975). Therefore " 'we should apply a rule of statutory construction which 'proceeds upon the supposition . . . [that these statutes] were governed by one spirit and policy and were intended to be consistent and harmonious in their several parts and provisions' . . . . 'The law favors constructions [of statutes] which harmonize with reason, and which tend to avoid unjust, absurd, unreasonable . . . results . . . . ' " *Xerox Corp. v. Travers*, 529 S.W.2d 418, 422 (Mo. banc 1975). Since the law was amended, two districts of our court of appeals have applied the interstate provision (Agreement on Detainers Act, §§ 222.-160–.220), which has identical goals, to a request received during pendency of a complaint. That Act clearly expresses the legislative intent that the state must provide defendant a trial, not merely a preliminary hearing. "If *trial* is not had on any indictment, information or complaint . . . such indictment, information or complaint shall not be of any further force or effect . . . . Section 222.160, art. IV § 5 (emphasis added).

In *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53 (Mo.App.1980), the eastern district, en banc, made absolute a writ to prohibit Judge McKenzie from trying relator on three criminal charges. Relator, imprisoned in Illinois, had complied with the Interstate Agreement on Detainers Act by filing a letter, July 19, 1977, with the proper court requesting all "outstanding Franklin County *complaints*" be acted upon. *Id.* at 54–55 (emphasis added). A preliminary hearing was held October 7, 1977. Trial was set for January 26, 1978. On January 24, relator filed a motion to dismiss, con-tending that the 180 day period on disposition of interstate detainers had expired and thus the trial court had, by operation of law, lost jurisdiction. In granting the writ, the eastern district held that the 180 day clock started to run when the request for disposition was made during the pendency of the complaint and that the preliminary hearing did not stop the running of the clock. In *State ex rel. Saxton v. Moore*, 598 S.W.2d 586 (Mo.App.1980), the western district also made absolute a writ of prohibition under facts similar to those in *Hammett*.

Section 222.140 of the UMDDL states that the "law shall be construed so as to effectuate its general purpose to make uniform the law of those states which enact it." Therefore, cases which have interpreted this provision in the other jurisdictions which have adopted the uniform act, *see* note 3, are valuable for interpreting the statute. *See State v. Anderson*, 515 S.W.2d 534, 539 (Mo. banc 1974).

In *People v. Lopez*, 41 Colo.App. 206, 587 P.2d 792 (1978), the state made the same argument that is being made here. A complaint had been lodged against Lopez in the county court (analogous to the associate circuit court). Lopez made a request to the county court for disposition of the charges against him. After a preliminary hearing, Lopez was bound over to the district court for trial (analogous to the circuit court). The state argued that demand for disposition had to be made to the district court where trial on the charge could take place. In holding that the request to the county court properly invoked the protection of the UMDDL, the court stated that when the defendant was "bound over to the district court pursuant to the same proceeding which had been initiated with the filing of a criminal complaint against him in county court; his county court records were transferred to district court. We are, therefore, dealing with a continuous proceeding . . . . " [6] Id. 587 P.2d at 795. The court in

---

6. The same is true in Missouri. The records in associate court are transmitted to the circuit court if the defendant is bound over. Rule 22.07(c). The complaint is the first step. When the defendant is bound over, it means there is probable cause to believe defendant

support of its holding that the charges against defendant must be dismissed went on to say that the "statutory provisions clearly provide for request for disposition of a detainer when a prosecution is initiated by either indictment, information, or criminal complaint. We do not believe that the General Assembly intended to penalize a defendant who first comes under the jurisdiction of a county court by virtue of a felony complaint and is subsequently transferred to district court by effectively delaying the implementation of his right to a speedy trial until the proceedings have been transferred to the district court. Therefore, we hold that where a criminal proceeding is initiated with the filing of a criminal complaint in county court, a request for disposition of detainer filed in the county court commences the running of the 90-day statutory period." *Id.* Accord, *People v. Boos*, 604 P.2d 272 (Colo.1979); *Pierson v. State*, 210 Kan. 367, 502 P.2d 721 (1972). *See also State v. Moore*, 521 P.2d 556 (Utah 1974) (refusing to follow the earlier cases of *State v. Clark*, 28 Utah 2d 272, 501 P.2d 274 (1972) and *State v. Belcher*, 25 Utah 2d 37, 475 P.2d 60 (1970), on which the state relies).

■ The interpretation urged by the state, in addition to being contrary to the plain language of the statute, would be contrary to the decisions set out above, and, even more important, would be contrary to the public policy reasons for the law. Under the state's interpretation, the state would have two 180 day periods in which to bring a prisoner charged by complaint to trial (complaint to preliminary hearing, 180 days; information to trial, 180 days). This interpretation does not forward a swift disposition of detainers. This would extend the time during which the untried state charges could be held over the head of an inmate and affect the conditions of imprisonment. It would be repugnant to the spirit and focus of the law which is to bring about a prompt disposition of the detainer.

We do not believe that the legislature in enacting this special statute to deal with the specific problems created by the detainers would intend such a result. *See State v. Bey*, 599 S.W.2d 243, 246 (Mo.App.1980).

Furthermore, if the prisoner were charged by indictment as permitted by Rule 22.01, the state would be limited to one 180 day period to bring him to trial. *See Russell v. State*, 597 S.W.2d 694 (Mo.App.1980). However, if the prisoner were charged by complaint, as here, the state would have two 180 day periods or close to a year to bring the prisoner to trial. As reasoned in the Colorado decision above, *People v. Lopez*, we do not believe the legislature intended to penalize a defendant who is proceeded against by complaint and is subsequently bound over to circuit court "by effectively delaying the implementation of his right to a speedy trial" until an information has been filed against him. The purpose of the UMDDL, as stated, is to provide for swift disposition of detainers. Whether the detainer is based on a complaint or an indictment is immaterial for purposes of this statute. The distinction drawn would rest on the form the original charge takes, while the evil addressed by the statute is delay no matter which form of charge is used.

■ Because the state failed to bring relator to trial within 180 days of receipt of his request for disposition and did not, for good cause shown in open court, extend that period, the trial court is without jurisdiction to hear the case. Section 222.100.

Our decision does not handicap or hamstring the prosecution. The written request by the prisoner is fair notice to the prosecutor that, if he plans to file and try an information if defendant is bound over, he should proceed with the necessary preliminary steps and the trial, all within 180 days or should avail himself of the saving provisions in the statute. The prosecution is not

has committed a felony. The chain of events started by the complaint has not come to an end. Defendant is not free to go. He must now answer in circuit court. As the Colorado

court said, it is a continuous proceeding. The matter has passed from a complaint which can be made by a layman to an official charge, but it grows out of the original complaint.

locked into commencing trial within a 180 day period no matter what the situation may be. If there are valid reasons why the prosecution cannot meet the deadline, the prosecutor is not helpless. Section 222.100 provides means for the state to obtain additional time beyond the 180 days in which to bring defendant to trial. The trial court is authorized to extend the time "for good cause shown in open court." It also permits a continuance on stipulation or on notice to the attorney of record.

The trial court having lost subject matter jurisdiction by operation of law, § 222.100, our preliminary rule in prohibition is made absolute and the trial court shall issue its order dismissing the information with prejudice.

DONNELLY, C. J., and WELLIVER, MORGAN, HIGGINS and BARDGETT, JJ., concur.

RENDLEN, J., concurs in result.